<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

U.S. SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

v.

SECURE CAPITAL FUNDING
CORPORATION, et al.,

           Defendants.

Civ. No. 11-00916

OPINION

<u>THOMPSON, U.S.D.J.</u>

      This matter has come before the Court upon Plaintiff U.S. Securities and Exchange Commission's ("Plaintiff's") Motion for Default Judgment as to Defendants Secure Capital Funding Corporation ("SCF"), ST Underwriters Corporation ("STUC"), Alan Smith ("Smith"), and Kiavanni Pringle ("Pringle") (collectively "Defendants"). (Doc. No. 85). The motion is unopposed.[1] The Court has decided the motion based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 78.1(b). For the reasons included herein, the Court grants Plaintiff's motion.

## PROCEDURAL HISTORY

      This action stems from the filing of Plaintiff's February 18, 2011 Complaint against SCF, Hill, PP&M Trade Star Partners ("PP&M"), and Pringle for alleged participation in an international "prime bank" fraud scheme. (Doc. No. 1, Compl.). After issuing a temporary restraining order ("TRO") on the date of the Complaint, (Doc. No. 4), the Court entered a preliminary injunction on February 28, 2011. (Doc. No. 10). The Court's TRO and preliminary

---

[1] The attempted submissions of H. Draudins are not considered as opposition for the purposes of this Opinion, as Mr. Draudins has repeatedly failed to join as a legitimate party in this case.

injunction orders included provisions to freeze those domestic bank accounts in which suspected fraud proceeds were deposited. (Doc. No. 4, ¶¶ I, II, V; Doc. No. 10, ¶¶ I, VIII). The orders also required defendants to repatriate monies that Hill and SCF had transferred out of the United States to bank accounts in the Republic of Latvia. (*Id.*).

On April 27, 2011, the Clerk entered defaults against SCF, Pringle and PP&M pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (*See* Clerk's Entry, April 27, 2011). PP&M was later dismissed without prejudice upon the discovery that it was a fictitious entity. (Doc. No. 28). After receiving leave from the Court, Plaintiff filed the First Amended Complaint ("FAC") adding Smith, STUC, and Secure Trust as Defendants on July 15, 2011. (Doc. No. 29, FAC). Although Plaintiff was unable to serve process on Secure Trust, which it now seeks to dismiss as a fictitious entity, Plaintiff did serve Smith and STUC. Neither Smith nor STUC, however, filed responsive pleadings, and the Clerk entered defaults against them on November 9, 2011 and February 8, 2012, respectively. (Clerk's Entry, Nov. 9, 2011; Clerk's Entry, Feb. 8, 2012). On April 20, 2012, the Court granted Plaintiff's motion for preliminary injunctions against Smith and STUC. (Doc. No. 61). On August 13, 2012, the Court entered a judgment against Hill as to liability and nonmonetary remedies pursuant to a settlement agreement with Plaintiff. (Doc. No. 66). The agreement reserved the issue of monetary remedies for later resolution. (Doc. No. 64).

Robert J. Del Tufo, Esq. was appointed as the agent for distribution of recovered fraud proceeds to investors on February 20, 2013. (Doc. No. 83). On June 24, 2013, Mr. Del Tufo submitted a proposed plan with respect to the distribution of the monies frozen in the domestic bank accounts and any additional monies recovered from Hill or any other Defendant. (Doc. No. 90).

Not party to the litigation, but a frequent contributor to the docket nonetheless, is one Harry Draudins ("Draudins"). Draudins has attempted at various points in this litigation to intervene in the proceedings, claiming to be the alter ego and/or successor in interest to Smith, STUC, SCF, and Secure Trust. (*See, e.g.*, Doc. Nos. 46, 68). However, despite various opportunities given by the Court to intervene legitimately in this action, Draudins has failed to follow Court orders and properly appear. (Doc. No. 56; Doc. No. 85, Att. 6, Ex. 3 to Norman Declaration, Feb. 2, 2012 Draudins Letter). The Court has thus returned to disregarding his submissions as a nonparty. (*See* Doc. Nos. 41, 47, 54, 87, 88).

On May 7, 2013, Plaintiff moved for (1) entry of default judgment with respect to SCF, STUC, Smith, and Pringle pursuant to Rules 54(b) and 55(b), (Doc. No. 85); and (2) dismissal of Defendant Secure Trust without prejudice, (Doc. No. 86). The Court here will address the motion for entry of default judgment, and will address the dismissal of Secure Trust in a separate Opinion.

## FACTUAL BACKGROUND

"In an application for an entry of default judgment, the Court accepts as true any facts contained in the pleadings regarding . . . liability." *Arpalo v. Dupre*, Civ. No. 08-3548, 2011 WL 831964, at *4 (D.N.J. Mar. 3, 2011). The FAC alleges that Smith masterminded, and Defendants participated in, the execution of a prime bank fraud. (Doc. No. 29, FAC, ¶ 1). A major component of this fraud was Defendants' false representations that they could provide access to exclusive offshore opportunities that would yield risk-free monthly returns of 10% to 100%, through multi-million dollar bank guarantees and medium term notes. (Doc. No. 29, FAC, ¶¶ 13-15). Investors were told that their initial investments would be either used to purchase Swiss "debentures" or held in "non-depleting" Swiss accounts to secure the leveraged trading in securities. (Doc. No. 29, FAC, ¶ 14). They were directed to send all funds to SCF, or to a

3

California-based entity known as Secure Capital Funding Corporation; from there, the majority of funds were transferred to a Latvian bank account. (Doc. No. 29, FAC, ¶¶ 22, 36-37; Doc. No. 3, Att. 1, Norman Decl., ¶ 25; Doc. No. 7, Supp. Norman Decl., ¶¶ 17, 23). Purchase money was also transmitted through J.P. Morgan Chase bank accounts in New Jersey. (Doc. No. 29, FAC, ¶ 27).

Contrary to Defendants' representations, the debentures and levered accounts in Switzerland were fictitious and no bank guarantees were ever provided. (Doc. No. 29, FAC, ¶ 20). Indeed, despite gathering over $4 million from investors between September 2010 and February 2011, (Doc. No. 29, FAC, ¶ 16; *see also* Doc No. 3, Att. 1, Norman Decl. ¶ 23; Doc. No. 7, Supp. Norman Decl., ¶ 8-24), no investors have been able to access their supposed Swiss accounts to make trades, and none are known to have been refunded their purchase money, (Doc. No. 29, FAC, ¶ 15).

As for the roles and relations between the defaulting Defendants, Smith, who controlled STUC, also directed and controlled the activities of Hill and SCF, (Doc. No. 29, FAC, ¶¶ 35), determining the allotted "fees" and/or "commissions" to be paid for their "services." (Doc. No. 29, FAC, ¶ 36). Smith used Pringle to identify and target investors for fraudulent solicitations, (Doc. No. 29, FAC, ¶ 37), and Smith himself directly communicated with at least two investors in furtherance of the fraudulent scheme, (Doc. No. 29, FAC, ¶¶ 39-40). One of those investors, an all-boys boarding school, was located in the United States. (Doc. No. 29, FAC, ¶ 39).

In fleshing out Defendants' overall scheme, the FAC explains that Smith and STUC held themselves out as providing brokerage services despite failing to register as such. (Doc. No. 29, FAC, ¶¶ 48-51). Smith and STUC also demanded "interest" from foreign and domestic investors on the "credit" supposedly made available in the fictional margin trading accounts. (Doc. No. 29, FAC, ¶ 52). Smith further sent to investors, or caused to be sent, arbitration demands

claiming that investors owed interest on the fictional trading accounts. (Doc. No. 29, FAC, ¶ 28).

Delving into Pringle's responsibility, the FAC explains that Pringle agreed to raise money for SCF in exchange for a fee of 3% of all "assets under management." (Doc. No. 29, FAC, ¶ 44). Pringle represented to investors that PP&M would professionally select the securities to be purchased from the margin brokerage accounts that were supposed to be established for the investor based upon the investor's purchase of Swiss debentures. (Doc. No. 29, FAC, ¶ 44). In one instance, Pringle engaged an unaccredited investor whom he instructed to wire $50,000 to a bank account controlled by SCF. (Doc. No. 29, FAC, ¶ 46). Pringle informed the investor that the fund would be used to purchase "non-depleting" "risk free" Swiss debentures which would secure a $5 million credit line managed for his benefit, and that he would receive 10 to 100% monthly returns with no risk to his initial investment. (Doc. No. 29, FAC, ¶ 46). Although the investor was provided with login information and a username for a website that purported to provide account access, he never received any account statements, trade confirmations or documentation, monthly payments or earnings. (Doc. No. 29, FAC, ¶ 46).

After detailing the above facts, the FAC sets out five claims for relief: (1) Fraud in the Purchase and Sale of Securities in Violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (2) Fraud in the Offer and Sale of Securities in Violation of Section 17(a) of the Securities Act; (3) Unregistered Offer and Sale of Securities in Violation of Section 5(a) and (c) of the Securities Act; (4) Acting as Brokers without Registration in Violation of Section 15(a) of the Exchange Act (with respect to Secure Trust and STUC only); and (5) Aiding and Abetting Secure Trust and ST Underwriters' Violations of Section 15(a) of the Exchange Act (with respect to Smith only). (Doc. No. 29, FAC). The FAC concludes with an extensive prayer for relief, requesting, *inter alia*, certain disgorgement of funds and permanent injunctive relief. Such

relief is now under consideration in the present motion with respect to Smith, SCF, STUC, and Pringle.

## DISCUSSION

The Court will first review its basis for asserting jurisdiction before analyzing whether default judgment is appropriate under Federal Rule of Civil Procedure 55.  Because Plaintiff seeks to secure a final judgment as to fewer than all parties, the Court will also evaluate the appropriateness of judgment under Federal Rule of Civil Procedure 54.  The Court will conclude with an inquiry into the requested relief.

  A.  <u>Jurisdiction</u>

"Before entering a default judgment against a party that has not filed responsive pleadings, 'the district court has an affirmative duty to look into its jurisdiction . . . over the subject matter and the parties.'" *Bank of America, N.A. v. Hewitt*, Civ. No. 07-4536, 2009 WL 1635365, at *2 (D.N.J. Jun. 10, 2009) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).  In this case, the Court finds subject matter jurisdiction proper where the prime bank securities and credit lines at issue are "securities" within the meaning of the federal securities laws under which Plaintiff has sued.  *See* Section 2(a)(1) of the Securities Act [15 U.S.C. §77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(3)(10)] (defining the terms "security" to include any "debenture," "note," or "investment contract"); *Reves v. Ernst and Young*, 494 U.S. 56, 66 (1990) ("The Court will consider instruments to be 'securities' on the basis of [investor] expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction.").  Plaintiff has also sufficiently alleged facts leading to the plausible inference that the parties incurred irrevocable liability within the United States, in accordance with Section 10(b) of the Exchange Act, in that the victims in this case complied with

6

instructions to send their payments to accounts in the United States. Thus, subject matter jurisdiction is appropriate under 28 U.S.C. § 1331.

The Court also has personal jurisdiction over this matter because the Defendants, directly and/or through their co-defendants and agents, have both solicited and transacted business in New Jersey. (*See, e.g.*, Doc. No. 29, FAC, ¶¶ 5-9, 11-41, 47-69; Doc. No. 7, Supp. Norman Decl., ¶¶ 7, 8, 19, 24). Thus, the Defendants have sufficient minimum contacts with the forum to support jurisdiction. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98, 314 (1980) (finding the "minimum contacts" requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (finding the exercise of specific personal jurisdiction requires there be some act or acts by which a defendant "purposefully avails itself of the privilege of conducting activities in the forum state").

B. Federal Rule of Civil Procedure 55(b)(2)

Since jurisdiction is proper in this instance, the Court turns to the question of default judgment. A district court may enter default judgment under Federal Rule of Civil Procedure 55(b)(2), after an entry of default by the Clerk of Court. *See Sourcecorp Inc. v. Croney*, 412 Fed. App'x 455, 458 (3d Cir. 2011) (citing Fed. R. Civ. P. 55). The decision to enter such judgment is primarily within the district court's discretion, *Bank v. Lake Estates Condominium Assoc., Inc.*, Civ. No. 11-5338, 2012 WL 1435637, at * 3 (D.N.J. Apr. 25, 2012) (quoting *Century Real Estate LLC v. Kenneth M. Yanni, Inc.* Civ. No. 07-6078, 2009 WL 904122, at *1 (D.N.J. Mar. 31, 2009)), with the significant caveat that default judgments are discouraged in favor of adjudications on the merits, *Hill v. Williamsport Police Dept.*, 69 Fed. App'x 49, 51 (3d Cir. 2003); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984); *Poulis v.*

*State Farm Fire & Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

The Third Circuit has established a three-part test for determining the appropriateness of default: (1) the "prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Court will briefly consider each of the factors below.

   1. The Prejudice to the Plaintiff if Default is Denied

"Prejudice is established . . . when a plaintiff's 'ability to pursue the claim has been hindered . . . [by, *inter alia*,] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'" *Nationwide Mut. Ins. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed. App'x 519, 524 (3d Cir. 2006) (quoting *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). "Delay in realizing satisfaction on a claim rarely serves to establish a sufficient degree of prejudice." *Id.* at 524-25 (quoting *Feliciano*, 691 F.2d at 656-57) (internal quotations and punctuation omitted).

Here, Plaintiff argues that, if default is denied, the case will remain in a state of perpetual suspension due to Defendants' decisions not to appear. Plaintiff will consequently be denied its right to a timely adjudication of its claims, and the victims of the fraud will never have any portion of their money returned. The Court, upon scrutinizing the conduct of Defendants up until this point, finds little evidence that further delaying judgment will inspire the Defendants to respond, and that the case might indeed continue on ad infinitum. As the delay in adjudication continues, evidence is no doubt lost, and the potential for continuing fraud on the part of Defendants is increased. Thus, although the Court is aware that delay is rarely sufficient to establish prejudice, in this instance, where the case has been pending for more than two years

and the cost to the victims continues to be great, the Court finds that this factor weighs in favor of an entry for default judgment.

  2. A Litigable, or Meritorious, Defense

Whether or not a defendant has a meritorious defense is frequently considered the most important factor in determining whether default judgment should be imposed or vacated. *See, e.g.*, *Bank v. Lake Estates*, 2012 WL 1435637 at *4, *Nationwide Mut. Ins.*, 175 Fed. App'x at 522. Over the course of this litigation, Plaintiff has submitted various materials to the Court that demonstrate the strength of its claims. In return, Defendants have either (a) failed to respond; or (b) responded with information and arguments that do little to showcase a litigable defense. Gathering these few paltry responses together, the Court considers (1) Smith's Wells Submission, submitted prior to his designation as a Defendant in this case; (2) Pringle's deposition testimony; and (3) the submissions of nonparty Draudins.

In his Wells Submission, Smith attempts to direct Plaintiff's investigation onto Pringle, and to deflect other accusations of fraud by implying that his companies could not be charged with offering and selling "securities" where investors could not have actually believed they were buying "debentures." (Doc. No. 85, Att. 10 & 11, 4th Suppl. Normal Declaration, Ex. 7). The Court notes that the fictional nature of a security does not remove it from the purview of the law where an investor believes it to be an actual security. *Reves*, 494 U.S. at 66 ("The Court will consider instruments to be 'securities' on the basis of [investor] expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction."). Here, Smith's sales contracts to investors expressly described the instruments as debentures.

With respect to Pringle's deposition testimony, the Court, upon review, agrees with Plaintiff's analysis that it is replete with admissions regarding the essential elements of

9

Plaintiff's charges against him. (*See, e.g.*, Doc. No. 85, Att. 3, 4th Supp. Norman Decl., ¶ 3; Ex. 1, Pringle Dep. 54:17-60:15; 63:12-64:20; 68:17-78:3 (confessing, among other things, to promising huge returns to four investors induced to purchase Secure Trust instruments, with no remotely realistic way of making good on those promises)). Pringle has also purportedly pled guilty to criminal charges regarding similar fraudulent conduct that postdates his participation in the scheme at issue here. (Doc. No. 85, Att. 3, 4th Supp. Norman Decl., Ex. 8, Pringle Guilty Plea).

Finally, with respect to nonparty Draudins, Plaintiff dismisses his various submissions as irrational or unintelligible in the context of the larger case, an assertion with which the Court agrees.

Thus, after balancing Plaintiff's strong evidentiary showing with the weak objections of Smith, the various admissions by Pringle, and the general lack of response (coherent or otherwise) from Defendants, the Court finds it unlikely that Defendants can show they have a meritorious defense. As a result, this factor also supports entry of default judgment.

3. Culpable Conduct

In demonstrating the third and final factor in the Third Circuit's default judgment inquiry, culpable conduct, a plaintiff must show more than mere negligence, *Nationwide Mut. Ins. Co.*, 175 Fed. App'x at 523 (quoting *Hritz*, 732 F.2d at 1183), but a showing of "[r]eckless disregard for repeated communications from plaintiffs and the court" may be sufficient. *Id.* (quoting *Hritz*, 732 F.2d at 1183-84 (rejecting the suggestion that it would be "an abuse of discretion for a trial judge to enter a default judgment to sanction a party who has callously disregarded repeated notices of a judicial proceeding")).

Here, Plaintiff argues that Defendants have no conceivable claim of excusable neglect. Smith received notice of the FAC and all subsequent filings. Draudins, the alleged successor in

interest and/or alter ego of the Defendants, has failed to appear before the Court despite explicit assurances that he would do so. Pringle was both served with process and deposed, but has ceased responding either to Plaintiff or to the Court. As this is the third factor the Court finds in favor of default judgment, the Court concludes that entry of default is appropriate under Rule 55(b)(2).

    C.  <u>Federal Rule of Civil Procedure 54(b)</u>

Turning now to the question of whether final judgment may be entered against fewer than all of the Defendants, Federal Rule of Civil Procedure 54(b) provides that when an action involves multiple parties,

> the court may direct entry of a final judgment as to one or more, but fewer than all . . . [the] parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action as to any of the . . . parties and may be revised at any time before the entry of a judgment adjudicating all of the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

In arguing for entry of final judgment, Plaintiff points out that the only parties not included in the motion for default judgment are Secure Trust (which the Court dismisses from this action in a separate Opinion) and Hill. With regards to the former, Plaintiff argues that it is highly unlikely it would ever again seek to bring suit against Secure Trust, as it appears to be a fictitious entity. With regards to the latter, Plaintiff points out that this Court has already entered a consent order against Hill, and, to the extent that order excluded a determination on penalties and disgorgement, Hill has agreed not to contest the allegations as demonstrated in the FAC. As such, Plaintiff argues there is little chance of inconsistency as to liability judgments or remedies.

Upon review of the facts and proposed relief, the Court agrees that there is no just reason for delay, and that default judgment with respect to the parties in question should be granted.

11

D. Relief

Since the Court has found entry of judgment appropriate pursuant to Rules 54 and 55, the Court now turns to the matter of relief. The Court concludes that Plaintiff has brought forth sufficient evidence in the FAC to demonstrate violations of Exchange Act § 10(b) and Securities Act § 17(a); violations of Securities Act §§ 5(a) and 5(c); violations of Exchange Act § 15(a)(1); and the aiding and abetting of violations of Exchange Act § 15(a)(1). In response to these violations, Plaintiff seeks to (1) permanently enjoin Defendants from violation of federal securities laws (as set forth specifically in the Order accompanying this Opinion); (2) disgorge Smith of his ill-gotten gains and collect prejudgment interest; and (3) exact civil penalties against Smith and Pringle. Although the Court will reserve the questions of disgorgement, prejudgment interest, and civil penalties for a separate evidentiary hearing, the Court finds permanent injunctive relief appropriate in this instance.

An action for permanent injunctive relief shall be granted "upon a proper showing by the commission [Plaintiff]" that "a person is engaged in acts in violation of the securities laws." *Securities and Exchange Comm'n v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980) (citing 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)). The purpose of such injunctive relief is not to punish the violator, but to deter him from committing future infractions of the securities laws. *Id.* The decision on whether to grant injunctive relief "is based on a determination of whether there is a reasonable likelihood that the defendants, if not enjoined, will again engage in the illegal conduct." *Id.* (citing *Tanzer v. Huffines*, 408 F.2d 42, 43, n. 1 (3d Cir. 1969) (per curiam)). To determine such likelihood, courts look to, "among other things, the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future

violations, and the likelihood, because of defendant's professional occupation, that future violations might occur." *Id.*

Here, upon a review of the evidence presented, the Court agrees with Plaintiff that Defendants acted with a high degree of scienter and committed multiple, systematic, and egregious violations of the securities laws. None of the Defendants in *this* litigation have admitted to the wrongfulness of their conduct or provided any kind of reassurance that such activity will not reoccur. The Court is troubled by Plaintiff's evidence that Smith has already attempted to further defraud his victims by sending phony arbitration demands and instructions to forward moneys for its payment. (*See* Doc. No. 29, FAC, ¶¶ 25-28; Doc. No. 85, Att. 10-11, 4th Supp. Norman Decl., Ex. 7). Plaintiff contends that a permanent injunction will provide law enforcement with a valuable tool if and when Smith is ever located and found to have perpetrated additional securities frauds. Based on all of these facts and circumstances, the Court agrees with Plaintiff that a permanent injunction is appropriate in this case.

With respect to the disgorgement of funds, payment of prejudgment interest, and the assessment of civil penalties, the Court, as previously stated, will reserve such issues for an evidentiary hearing to take place on the date and time indicated in the accompanying Order. Given the significant amount of money at issue in this case, the Court considers it appropriate to give the defaulting Defendants a final opportunity to be heard.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Default Judgment as to Defendants SCF, STUC, Smith, and Pringle. (Doc. No. 85). An appropriate Order accompanies this Opinion.

/s/Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Date:   June 27, 2013

13