UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. Securities and Exchange Commission, | Civ. No. 11-916 |
| Plaintiff, | **OPINION** |
| v. | |
| Secure Capital Funding, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court on Plaintiff U.S. Securities and Exchange Commission's, ("Plaintiff's"), application for assessment of monetary remedies against Defendant Bertram A. Hill, ("Defendant"). The Court has decided the motion after considering the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b).[1] For the reasons set forth below, the Court requires disgorgement and payment of prejudgment interest and also assesses a civil penalty against Defendant.

## BACKGROUND[2]

On July 30, 2012, Defendant consented to a judgment against him as to liability and injunctive relief. (Doc. No 64). The Court entered Judgment against Defendant pursuant to this consent. (Doc. No. 66).

---

[1] On October 3, 2013, the Court granted Plaintiff's request to determine the question of monetary remedies against Hill on the papers. (Doc. No. 104). Defendant's brief objected to the calculations concerning ill-gotten gains and the civil penalty. (Doc. No. 108).

[2] Much of the background for this matter, including the facts and law relating to the liability of the codefendants in this case, is set forth in its in this Court's Opinion dated June 28, 2013. (Doc. 94).

Defendant was involved in a large scale financial fraud scheme in which he induced individuals to deposit money into a certain New Jersey bank account. (Doc. No. 66). Defendant has a total of $758,000 in ill-gotten gains from this scheme. (Doc. No. 107 at 6). Defendant directed investors to deposit a total of roughly $3.97 million into a JP Morgan Chase bank account. (Doc. No. 85, Norman Declaration at ¶ 23). During the scheme, Defendant transferred $173,000 out of this account to pay for various expenses and divided the remaining $3.8 million with Alan Smith, a codefendant. (*Id*. at ¶ 27). Secure Capital Funding, a company partially owned by Defendant, received 20% of the proceeds from these investors. (Doc. No. 29; Doc. No. 66). Defendant was Secure Capital Funding's only employee and was its only director besides Smith. (Hill Deposition Transcript 45:8-16). Defendant was also the only person authorized to make withdrawals from the account and transferred large amounts of money directly out of this account into accounts solely controlled by him. (*Id*. at 27:6-28:15, 102:24-103:4).

## DISCUSSION

The Court will address the following issues: disgorgement, prejudgment interest, and civil penalties.

**1. Defendant's Obligation to Disgorge Ill-Gotten Gains**

"Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997). "Disgorgement of illegally derived funds is a remedy within the equitable powers conferred on this Court [. . .]." *S.E.C. v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996) *aff'd,* 124 F.3d 449 (3d Cir. 1997). "The district court has broad discretion in fashioning the equitable remedy of a disgorgement order." *Id*. (citations omitted).

2

The SEC has the initial burden of establishing that "its disgorgement figure reasonably approximates the amount of unjust enrichment." *Id.*; *S.E.C. v. Lazare Indus., Inc.*, 294 F. App'x 711, 714 (3d Cir. 2008) (amount of disgorgement reviewed under "abuse of discretion" standard); *see SEC v. Graystone Nash, Inc.*, 820 F. Supp. 863, 875 (D.N.J. 1993). In meeting its burden, the "plaintiff is not required to trace every dollar of proceeds misappropriated by the defendants [. . .] nor is plaintiff required to identify monies which have been commingled by them." *Hughes Capital Corp.*, 917 F. Supp. at 1085; *see also SEC* v. *Huff*, 2012 WL 10862, at *1 (11th Cir. Jan. 3, 2012) ("The SEC's burden for showing the amount of assets subject to disgorgement [. . .] is light: a reasonable approximation of a defendant's ill-gotten gains.").

Once the plaintiff has established that the disgorgement figure is a reasonable approximation of unlawful profits, the burden of proof shifts to the defendants, who must "demonstrate that the disgorgement figure is not a reasonable approximation." *Hughes Capital Corp.*, 917 F. Supp. at 1085. "[A]ll doubts concerning the determination of disgorgements are to be resolved against the defrauding party." *Id.*; *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) ("Exactitude is not a requirement; [s]o long as the measurement of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty.").

> [W]here a defendant's record-keeping or lack thereof has so obscured matters that calculating the exact amount of illicit gains cannot be accomplished without incurring inordinate expense, it is well within the district court's discretion to rule that the amount of disgorgement will be the more readily measurable proceeds received from the unlawful transactions.

*SEC v. Calvo*, 378 F.3d at 1217-18.

Here, the record makes clear that Defendant was entitled to 20% of the roughly $3.8 million in fraud proceeds. (Doc. No. 66; Doc. No. 107 at 9). Defendant also exercised considerable control over the accounts in which the $3.8 million were deposited. (Hill

Deposition Transcript 27:6-28:15, 102:24-103:4; Doc. No. 29; Doc. No. 66). Therefore, Plaintiff is entitled to $758,000 in disgorgement from Defendant's ill-gotten gains.

### 2. Defendant's Obligation to Pay Prejudgment Interest

"Prejudgment interest on damages awarded pursuant to a violation of the federal securities laws is a matter of judicial discretion. In exercising its discretionary powers, a court must consider both compensation and fairness." *S.E.C. v. Hughes Capital Corp.*, 917 F. Supp. at 1089-90; *S.E.C. Comm'n v. Hasho*, 784 F. Supp. 1059, 1112 (S.D.N.Y. 1992); *see S.E.C. v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1476 (2d Cir. 1996) (decision to award prejudgment interest, like the decision to grant disgorgement, is left to the district court's "broad discretion"). Proof of a defendant's scienter justifies the award of prejudgment interest. *S.E.C. v. Utsick,* 2009 WL 1404726 at *15 (S.D. Fla. May 19, 2009) ("in the context of Section 10(b) and Rule 10b-5 actions, a defendant's scienter is sufficient to justify an award of prejudgment interest").

Here, Defendant consented to pay prejudgment interest and also consented to accept as true the allegations that he acted with scienter. (Doc. No. 66). Therefore, the Court now turns to the amount of prejudgment interest.

As for the amount of the prejudgment interest, most "courts have adopted the [IRS] underpayment rate without controversy." *S.E.C. v. Yun*, 148 F. Supp. 2d 1287, 1292 (M.D. Fla. 2001); *see S.E.C. v. Hughes Capital Corp.*, 917 F. Supp. at 1090 (adopting the underpayment rate method). "That rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from [his] fraud." *S.E.C. v. Aleksey*, 2007 WL 1789113, at *2 (M.D. Fla. June 19, 2007) (*quoting SEC v. First Jersey Securities, Inc.*, 101 F.3d at 1476).

Here, the Court adopts the underpayment rate used by the IRS. The record shows that the amount due by the end of the briefing schedule based on this rate is $69,201.23. Therefore, Defendant owes $69,201.23 in prejudgment interest.

**3. Defendant's Obligation to Pay a Civil Penalty**

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act set forth three tiers of civil money penalties. 15 U.S.C. §§ 77t(d), 78u(d)(3). A third tier penalty is appropriate when a defendant's violation involved fraud or deceit and resulted in substantial loss to others or created a significant risk of substantial loss to others. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B).

For violations occurring after March 3, 2009, a third tier penalty imposed upon an individual may not exceed the greater of the following: (1) $150,000 for each violation by a natural person and $725,000 for each violation by any other person; or (2) the gross amount of the defendant's pecuniary gain. 17 C.F.R. § 201.1002, Table IV to Subpart E.

Courts consider the following factors in determining the amount of penalty to impose:

> (1) the egregiousness of the violations at issue, (2) defendant's scienter, (3) the repeated nature of the violations, (4) defendant's failure to admit to their wrongdoing, (5) whether defendant's conduct created substantial losses or the risk of substantial losses to other persons, (6) defendant's lack of cooperation and honesty with authorities, if any, and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendant's demonstrated current and future financial condition.

*S.E.C. v. Bear Stearns,* 626 F. Supp. 2d 402, 407 (S.D.N.Y. 2009). A defendant's ability to pay is "at most" one factor the Court should consider when imposing a penalty; securities laws do not prohibit the imposition of a penalty in excess of a violator's ability to pay. *S.E.C. v. Warren,* 534 F.3d 1368, 1370 (11th Cir. 2008).

Courts have applied "two general methods for assessing civil penalties in securities cases, a 'per violation' approach and a 'proportional approach.'" *S.E.C. v. Koenig,* 532 F.Supp.2d 987,

995 (N.D. Ill. 2007). Courts applying a "per violation" approach have imposed a penalty for each of the false filings made by a violator, *see S.E.C. v. Huff,* 758 F. Supp. 2d 1288, 1366 (S.D. Fla. 2010); *SEC v. Coates,* 137 F. Supp. 2d 413, 430 (S.D.N.Y. 2001), or for each of the securities laws violated by the defendant, s*ee S.E.C. v. Henke,* 275 F. Supp. 2d 1075, 1086 (N.D. Cal. 2003).

Here, the Court employs the proportional approach and assesses a civil penalty against Defendant in the amount of $740,000, an amount slightly less than his ill-gotten gains. Defendant was closely involved in the large-scale fraud, caused a significant amount of actual loss, and acted with a high degree of scienter. (Doc. No. 29; Doc. No. 66).

## CONCLUSION

For the reasons set forth above, the Court assesses a civil penalty against Defendant and requires Defendant to pay a civil penalty, disgorge all ill-gotten gains, and pay prejudgment interest.

*Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Dated: April 29, 2014